Good morning, Counsel. Good morning, Your Honors. Jeffrey Dickerson appearing on behalf of the plaintiffs below and the appellants here. Appealing off of a dismissal order at the inception of a case where the facts in the complaint should have been construed in light that was favorable to the plaintiff. What are the facts in the complaint? I may have missed it, but I saw a lot of conclusions. I saw a lot of assertions that you don't know the details of the facts, but I didn't see too many facts. When the motion below arose, a document was attached as an exhibit, which is an excerpt of Record 106, which is the district attorney's review of the shooting. And if you go through ER 106, and I intend to do that with the Court here, if you'll allow me. But is that subject to the rule you're asserting? The facts that we have to take most favorably to you are the facts asserted in the complaint, yes? That's true. There are no facts asserted in the complaint. Why do we even reach the issue of what your adversary submitted as part of his qualified immunity presentation? Well, we get to the question whether the district court should have granted leave to amend when he dismissed. A dismissal order with 10 days leave to file an amended complaint stating facts that meet the plausibility standard under Twombly and Iqbal. At the time we filed the complaint, we knew that there was a shooting. We knew that he called backup. But that's all we knew. And once ER 106 was filed into the record, we knew more facts. We knew that Hatcher had commandeered this plumbing truck, engaged in what they want to call a pursuit, but it doesn't appear to be that. If you look at ER 106, it's described as finding the vehicle up a couple of streets against the curb, having slid out on snow and ice. That Hatcher gets out of the vehicle, approaches the vehicle with his gun drawn, opens the back door. In none of this sequence of events is there any indication in that document that he said, stop, stop. You're arguing all these facts that are not alleged in the complaint. So it seems to me you're not really challenging the dismissal order. What you're really saying is you should have been given leave to amend. That's my point. Is that what your argument comes down to? Yes, Your Honor. Because none of this stuff is alleged in your complaint, right? True. What I'm showing, basically now what I'm showing is that if we were granted leave to amend, it would not be futile because we would be able to plead plausible facts that would indicate both the unreasonableness of the seizure under the Fourth Amendment as to the estate's claim and the substitute process issue of whether there was an opportunity, if you will, to deliberate, to apply the deliberate indifference standard. And why was it error for the district court not to grant you leave? Did you ask for leave? I mean, before your motion for reconsideration? Yes. In what? How did you ask for it? The request for leave is at ER 64. The emergency motion? No, before that. In our opposition, we requested leave. Opposition to the motion to dismiss? Yes, Your Honor. So that was before the court? Yes, sir. And the district court never addressed it in the order of dismissal? That's correct, Your Honor. And because he didn't address it, he did not find whether or not it would be futile. And under the Stackman case, this Court has to review that denial of leave to amend de novo, not for an abuse of discretion, to look at the record and see if there are facts that could be pled under the plausibility standard that would meet the standards of culpability at issue on the Fourth Amendment and the substitute process. But why did you file the emergency motion to amend? That was because I had received the letters, testamentary or letters of appointment, if you will, for the one plaintiff to act as personal representative of the estate of the decedent for the purpose of clarifying the record and showing this Court that because there's a footnote in the district court's order of dismissal saying it looks like it's underway, but it hasn't been done yet, so sorry, and I wanted to make the point that that's been accomplished on remand. If the district court is directed to give leave to amend, we can allege that they've been properly appointed and, therefore, can't proceed on behalf of the estate. Was the motion to dismiss orally argued before the district court? It was not. So it was decided without any oral argument. So all the court had before it were the papers, right? Yes. And in your opposition, you asked for leave. I did at ER-64. All right. In fact, I specifically mentioned the plausibility standard. I didn't cite Iqbal or Twombly, but the district court applies that. What you did is you asked for it in a single sentence at the very end of your six-page submission, right? Well, I think that the ---- I'm not saying that's insufficient. I just want to ---- I don't think we should aggrandize this request beyond what it actually was. I don't think I did. Well, it reads as follows. This is the last paragraph of your paper. Quote, for these reasons, plausible claims are stated and the motion should be denied, and the alternative, leave to amend, should be granted. Leave would not be futile as more facts can be pled if necessary to reinforce the plausibility of the claims. Close quote. You don't indicate what those more facts are. So if the district court denied your motion to amend, as he apparently did sub silentio, the ---- it would be based on the facts that were before him, but not on these additional facts that you don't specify. Yes? These facts that I'm telling you about in ER-106 were before him because the defense had put it in. No. Those are the ones you're referring to in the first sentence of what I just read. And then you say more facts could be pled if necessary, but you don't say what they are. No. The first sentence. Of what you said? The first sentence refers to the facts. That's not what you meant. Is that what you said, but you meant something different? Because that's just there in black and white. The first sentence talks about the facts in the complaint. The second sentence says I can give you more, and more would be in ER-106. Well, that's not what you said. Well, I didn't have ER-106 designated as such at the time. I'm not trying to be smart with the Court. I'm just saying these facts are in the record. The district court had access to them. And had he had oral argument, we could have talked about this some more. Generally, when there is a motion for leave to amend, a proposed amended complaint is attached with all of the facts spelled out. So you can understand why Judge Rakoff is asking you if that single sentence was enough to alert the Court as to what the facts, additional facts would be. That's a fair question, Your Honor. My – this wasn't a motion for leave to amend. It was reminding the Court that it has an obligation that absent futility, leave to amend should be granted when granting a motion to dismiss. That's the law of this circuit. And I'm indicating to the Court that on de novo review of that, there are facts that would not render the amendment futile. This Court should issue an order reversing the district court's decision in remanding with instructions to grant leave to amend. But the district court granted the motion to dismiss based on qualified immunity,  Yes. And so you're saying that the facts at 106 would refute the qualified immunity finding? I believe so. If we look at the fact that the driver had indicated that the knife was no longer in the man's hand but had been placed into a bag on the seat next to him. Hatcher says that he saw a knife at some point during the process. That's contradictory evidence that needs to be construed in the light most favorable to the plaintiff on a motion for qualified immunity under Saussure. So just there we have two contradicted facts that are very important as to the dangerousness, whether he's armed or not and so forth. Well, in my view, the critical point is whether or not the purpose-to-harm standard was to be used or the deliberate indifference standard. If you look at ER 106, and even going, assuming that there was no opportunity to deliberate, if you look at the facts of the Porter case, and Judge Tashima, you were on that panel, I believe. If you look at the end there, the situation confronted in that case was very similar to the situation confronted here. It was somewhat of a slow. This is not your pursuit like they had in Lewis or some of the other pursuit cases like Haugen. This is a car that's against a curb contained. There's another vehicle available to block it. There's a dispute about whether the suspect's armed. We know that flight alone is not a basis for shooting a person, so there's a whole issue as to what type of danger this person actually presented to this officer at the time he made the decision to shoot. And it was a more contained situation than the full-out pursuit type of case, where the purpose-to-harm standard was developed. In this case, there was a slowly evolving situation, and his decision to not to wait for backup, but to intercede with no emergent situation apparent to him. He's outside the car. He's got the gun. Instead, he makes the move to get inside. And as far as the driver was concerned, applying gas and trying to get traction to take off, and I'm talking about ER-106 here. I urge your honors to look at it. For all she knew, this guy was in plain clothes, had a gun. He's trying to get in the backseat of the car on some street. They didn't know they were being pursued because there had been no Code 4, no lights, nothing. This is a plumbing truck. It's the middle of the night, and this man's getting into their car with a gun. She could be scared. And Justice Importer, the person, the plaintiff, the deceited importer, the Court here found that there were facts that indicated that he might not have known that he was really being asked to do what he was being asked to do by a law enforcement officer. All right, counsel. You've exceeded your time. We'll give you one minute for rebuttal. Good morning, Your Honor. Kelly Watson on behalf of A1 Chemical and Brad Phillips. Because it appears the plaintiff has waived all his claims against my clients, I'm going to yield all of my time to Mr. McKellar. All right. Thank you, counsel. Good morning. May it please the Court and counsel, I am John McKellar with the Nevada Office of the Attorney General, appearing here today on behalf of Stephen Hatcher. The district court dismissed all of plaintiff's claims. Plaintiffs have dropped all claims except their 14th Amendment substantive due process claim brought by Elise Martinez based on an alleged familial association. Which was dismissed on grounds of qualified immunity, yes. Yes, it was, Your Honor. And was anything presented to the district court other than ER-106? It was plaintiff's complaint, which you have already noticed how deficient that was, and then ER-106 because there's case law and rules that allow the presentation of a public record without turning a motion to dismiss into a motion for summary judgment. So you, in essence, supplemented his complaint with your filing. I did add to the facts of the district attorney's final conclusions, yes. And I think those final conclusions clearly show that the standard is purpose to harm unrelated to a legitimate law enforcement objective. But you can't just introduce the conclusion. The facts that led to that conclusion are also part of the record at that point, right? And I would agree. I did – I appreciate the district court not relying on that for the motion to dismiss because it makes it much easier for this Court to decide whether or not to include those facts. But if you include those facts, you have the fact that there was – that the decedent was a danger based on the occupant who exited the car and told Agent Hatcher that a switchblade knife had been placed to the throat of the driver. You have a pursuit because you have a car taking off and then a delivery truck driver who witnessed the violence of the decedent against the passenger and the driver stopping to pick Agent Hatcher up. It was a snowy and icy day. So when the vehicle in which the decedent was traveling got temporarily stuck against a curb, Agent Hatcher was able to catch up with the vehicle. According to plaintiff's complaint, the vehicle was still moving because Agent Hatcher had to order decedent to stop. If you go back to the district attorney's final conclusions, the vehicle was starting to gain traction when decedent was yelling at the driver to go, go, go. And it was at that point that Agent Hatcher had to make a split-second decision as to how to stop a fleeing suspect, how to protect the life of the driver, and how to protect the lives of the public who would be in the path of this fleeing suspect. Clearly, purpose to harm and the purpose to harm standard applies here. And there was – it was definitely related to a legitimate law enforcement objective, and there are no allegations that – or argument that it was not related to a legitimate law enforcement objective. Well, the counsel for the plaintiff takes the view that if he were permitted to amend the complaint to put in the facts that were in the DA's report, that that would raise a question as to whether the standard should be deliberate indifference or purpose to harm. What's your response? Well, I think the best way to address that is twofold. Purpose to harm, you have a moving vehicle pursued by a law enforcement officer. I have not been able to find a case which involves moving vehicles or a pursuit where deliberate indifference was applied as opposed to purpose to harm. But opposing counsel's view is that it wasn't clear that this was a law enforcement officer, and the report could bolster his argument in that regard. According to a plaintiff's own complaint, Agent Hatcher identified himself as a law enforcement officer. You know, in Las Vegas, we've had a spate of people, of incidents where people have claimed to be law enforcement officers and they really aren't. So, you know, identifying oneself as an officer to some people may not necessarily invoke a belief that they really are an officer. That may be the case, but that doesn't change the fact that we have a moving vehicle with an actual law enforcement officer pursuing, which implicates the purpose to harm standard, and plaintiff has not alleged any purpose to harm unrelated to a legitimate law enforcement objective. Don't you think your argument, the argument you're making seems to me would be better made once we're able to, once the district judge is able to look at an amended complaint to see what exactly it is the plaintiff could allege? In other words, I think his main point is that it's not at all certain from this exhibit, and that's not, and of course, he's not limited to the exhibit and the new exhibit that he applies. Do you think it's better to wait for the amended complaint before you start making these arguments against it? I have a twofold response to that, Your Honor. First, plaintiffs through counsel failed to amend when they were allowed to do so under the rules. They could have amended without leave of court right after I filed my motion to dismiss, because I'm, as I'm sure you're well aware, that is not a responsible plea. It doesn't cut off his right to amend, though, after the motion to dismiss. No. Isn't he correct, he meaning Mr. Dixon, that the law of the circuit is, when a district judge dismisses a complaint under 12b-6, the district judge has to grant leave unless it's futile? I believe that is the law of the circuit. I do agree that's the law of the circuit. However, the district court dismissed based on qualified immunity. It looks like the merits prong of qualified immunity. And plaintiffs also could have requested leave to amend any time after they filed their opposition. He did request leave to amend in his opposition to your motion. Respectfully, Your Honor, he did not, because the rules in case law set out that you have to attach a copy of your proposed amendment to a plaintiff. That's only to a motion. That's only if you make a motion to amend. Well, I – since he needs to make a motion. You mean to say if a district judge is hearing a motion to dismiss and in opposition the plaintiff says, well, Your Honor, if you do grant the motion, I would like leave to amend because I believe I have facts that would render this amendment not futile, you mean to say that's not a sufficient argument to require the district judge to consider whether or not leave to amend should be granted? Is that your argument? My – there is a second part to that rule that says – But is that your argument? Yes or no, first of all. That is not my complete argument, no. My – there is also the fact that the plaintiff must set out with specificity how he would overcome the defenses. If given – but he – if he's not given the opportunity, how can he do that? Well, he can – if it's in an oral argument, he can do a speaking specification. So the judge can say, well, tell me what you can allege, right? But there was no oral argument in this case. Right, which means that plaintiff could have very easily put those facts in his motion. Let me – let me – The question is not whether he could very easily. The question is whether it was error not to grant leave to amend. No, it was not. And also on qualified immunity, you also have the second prong, if I might quickly get into a few things here, of the clearly established right. Plaintiffs first alleged that the standard was deliberate indifference. Then in their proposed amended complaint, they tried to satisfy purposed harm. Now they're back to deliberate indifference. And the district court said the standard was purposed harm. So I don't know how with those facts the plaintiff could establish a clear violation of a – or a clearly established constitutional right. And in addition, the district attorney is charged with objectively examining the facts and concluded that no objective – But that's not binding on the district court. You know that. Yes, I do know that. But it's clear indication that plaintiff would fail if he moved forward because – It's not clear at all. Okay. And if – It's not clear. Did – the district attorney's one-page, fairly bare-bones final report says that he's relying on the thoroughness and completeness of the investigation by the Reno Police Department. So there's clearly other documents that he relied on in reaching his conclusions, and none of them were presented to the district court, correct? That's correct, because I don't believe that it would have been as easy to establish that those were public records as the district attorney's final conclusions were. And if I might ask the Court's indulgence to talk about deliberate indifference. I'm sorry. Go ahead. As to the deliberate indifference standard which plaintiff argues, plaintiff has never alleged that there was time for Agent Hatcher to think about this. He didn't allege that Agent Hatcher had exculpatory evidence, which he was refusing to disclose. He didn't allege that there was a caseworker who knew of a substantial risk of harm to – The problem is you're arguing against a complaint, and, you know, Mr. Dickerson's main argument is you should have been in leave to amend. So, you know, that doesn't apply to his amended complaint, the argument you're making, because you don't know when he's going to allege. Well, he gave us a proposed amended complaint, and that didn't change the fact that it still should have been dismissed. That was the prohibited post-judgment attempt to amend. And I thank the Court for its time and ask it to affirm the district court's dismissal of this case. All right. Thank you, counsel. One minute for rebuttal. Respecting the Court's time, we'll submit, Your Honor. All right. Thank you. Not so fast. Time to get out of here. So did you ask for the underlying documents? This is a motion to dismiss, pure and simple, right out of the chute. No, no. This was – the issue was, so far as this particular claim was concerned, was qualified immunity, which is a fact-based as well as a law-based determination. The only facts presented by your adversary was this final report of the Washoe County District Attorney. But on its face, it is the result of his review of a compilation of numerous documents. Now, you objected on hearsay grounds to this, but did you make any attempt to get the underlying documents, which would have borne much more directly on the very issues you're seeking to raise? In my opposition, I specifically, in that paragraph talking about that document, mentioned Rule 56F and said that we should be given an opportunity to do that. The district court didn't give us that opportunity. The discovery cutoff date in this case was out in 2011. I mean, it was months and months and months beyond. The discovery cutoff was February 28th of 2011, and the judgment was entered on July 20th of 2010. So we never even got off the ground on discovery because of these motions, Your Honor. And I think that's part of the problem here. We never got to those Reno Police Department documents. Thank you. All right, counsel. Thank you to both counsel for your arguments in this case. The case just argued is submitted for decision by the Court.
judges: Tashima, Rawlinson, Cjj Rakoff (S. New York), Dj